NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ANTHONY MASON, | ) | No. C 06-3857 JF (PR) |
| Petitioner, | ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | ) | |
| A.P. KANE, Warden, | ) | |
| Respondent. | ) | |
| | ) | (Docket No. 10) |

Petitioner Anthony Mason, a California state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of Prison Terms ("Board") that he is unsuitable for parole. The Court directed Respondent to show cause why the cognizable claim should not be granted. Respondent has filed an answer addressing the merits of the petition, and Petitioner has filed a traverse.[1]  Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claim presented and will deny the petition.

///

///

///

---

1. Petitioner moved to file a supplement to his traverse. Docket No. 10. The Court grants this motion and accepts the supplement as filed.

# BACKGROUND

The charges against Petitioner arose from his murder of his mother-in-law. An Alameda Superior Court jury found Petitioner, who currently is in custody at Soledad State Prison, guilty of second-degree murder (Cal. Pen. Code § 187) with the use of a deadly weapon (Id. § 12022(b)), and that Petitioner personally inflicted great bodily injury (Id. § 1203.075). Ans., Ex. A (Abstract of Judgment). The trial court sentenced Petitioner to a total term of sixteen years to life. Id.

The facts of the commitment offense were described by the California Court of Appeal as follows:

> In 1982, [Petitioner] and another person [named Hall who lived near the victim] went to the home of [Petitioner's] 53-year-old mother-in-law, who was confined to a wheelchair. [Petitioner] reported that his companion told him that she had a large sum of money at her residence and the two men decided to rob [Petitioner's] mother-in-law while she was asleep. At trial, [Petitioner's] companion testified that [Petitioner's] mother-in-law asked him to take her two-year-old granddaughter outside, leaving [Petitioner] alone with his mother-in-law. According to [Petitioner's] companion, about 15 to 30 minutes later, [Petitioner] appeared and asked him for fresh clothing; [Petitioner] had blood on his clothing and his shoes. The following day, after [Petitioner's] wife became concerned about her mother's welfare, [Petitioner] accompanied his wife back to the home of his mother-in-law. The mother-in-law was found dead inside the residence. She had been stabbed eight times; four of the wounds were fatal.
>
> [Petitioner] denied that he was the one who committed the murder. He claimed that he remained outside while his companion entered the residence of his mother-in-law. According to [Petitioner], his companion returned and told him that the victim had tried to hit him with her cane. [Petitioner] asserted that his companion stabbed her and took her money, which the two men divided. [Petitioner] claimed that he got blood on himself after he went back into the house. Once he became aware of the stabbing, [Petitioner] stated that he wanted to call the police, but he did not call because his companion threatened him.
>
> [Petitioner] maintained that he was innocent, but his companion, who was given immunity for his testimony, testified against him. [].
>
> [Petitioner] had no prior record of convictions. He had been arrested for a battery on March 22, 1977, and for petty theft (§ 484) on December 28, 1981. Both matters were dismissed.
>
> While incarcerated, Mason had four official misconduct hearings known as "CDC 115s." The first, in 1984, was for force and violence, and for threatening staff. Mason had a CDC 115 in 1984 for possession of marijuana and currency and another CDC 115 in June 1990 for being under the influence. He also had a CDC 115 in January 1990 for trafficking of narcotics.

In re Mason, No. A115088, 2007 WL 1123013, at *1 (Cal. Ct. App. Apr. 17, 2007).[2]

In 2004, the Board found Petitioner unsuitable for parole, citing as its reasons that "[t]he offense was carried out in an especially cruel and callous manner," in a way it also described as "dispassionate" and "which demonstrates a disregard for human suffering." Ans., Ex. C (Transcript of Jul. 26, 2004 parole hearing) at 46. In response, Petitioner filed state habeas petitions, all later denied, in the California superior, appellate, and supreme courts. Ans., P. & A. at 3. Petitioner filed the instant federal habeas petition in 2006.

As the basis of federal habeas relief, Petitioner alleges that the Board's denial of parole is not supported by sufficient evidence having indicia of reliability and therefore was arbitrary and capricious.[3] Order to Show Cause ("OSC") at 2.

## DISCUSSION

**A.    Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

---

2. In 2006, the Board again found Petitioner unsuitable for parole. The cited opinion relates to Petitioner's state habeas petition challenging the 2006 decision by the Board. However, Respondent has not suggested that the instant case may be moot because Petitioner's current confinement is a result of the 2006 decision and not the 2004 decision that is the subject of the instant petition.

3. Respondent contends that this Court does not have subject matter jurisdiction over the instant petition because California inmates do not have a federally-protected due process right to parole release. Ans. ¶ 10. However, controlling Ninth Circuit authority holds that Petitioner has a federally-protected liberty interest in parole release. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006).

1  based on an unreasonable determination of the facts in light of the evidence presented in the State
2  court proceeding." 28 U.S.C. § 2254(d).

3   "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court
4  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if
5  the state court decides a case differently than [the] Court has on a set of materially
6  indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the
7  'reasonable application clause,' a federal habeas court may grant the writ if the state court
8  identifies the correct governing legal principle from [the] Court's decisions but unreasonably
9  applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court
10 may not issue the writ simply because that court concludes in its independent judgment that the
11 relevant state-court decision applied clearly established federal law erroneously or incorrectly.
12 Rather, that application must also be unreasonable." Id. at 411.

13   "[A] federal habeas court making the 'unreasonable application' inquiry should ask
14 whether the state court's application of clearly established federal law was 'objectively
15 unreasonable.'" Id. at 409. In examining whether the state court decision was objectively
16 unreasonable, the inquiry may require analysis of the state court's method as well as its result.
17 Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively
18 unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss
19 of error fails to give proper deference to state courts by conflating error (even clear error) with
20 unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

21   A federal habeas court may grant the writ if it concludes that the state court's adjudication
22 of the claim "results in a decision that was based on an unreasonable determination of the facts in
23 light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The
24 court must presume correct any determination of a factual issue made by a state court unless the
25 petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C.
26 § 2254(e)(1).
27 ///
28

**B.     Petitioner's Claim**

The Board complies with due process provided that there is "some evidence" to support its decision. A parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). Additionally, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. The Board is to consider "all relevant, reliable information available." 15 Cal. Code Regs. § 2402(b). Section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. 15 Cal. Code Regs. § 2402(c)-(d).[4]

---

4. The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

1    Applying these principles to the instant case, the Court concludes that Petitioner's claim
2    is without merit. The record shows that there was "some evidence" to support the Board's parole
3    decision, based not only on the circumstances of the commitment offense, but also on other
4    relevant considerations. After a full hearing, the Board concluded that Petitioner was not suitable
5    for parole and "would pose an unreasonable risk of danger to society or a threat to public safety if
6    released from prison." Ans., Ex. C at 46. The Board noted that "the victim, who was confined to
7    a wheelchair, was stabbed eight times, four of them fatally." Id. Furthermore, "[t]he offense was
8    carried out in a manner which demonstrates a disregard for human suffering." Id.

9    In addition to the nature and circumstances of the commitment offense, the Board
10   considered other parole suitability factors, such as Petitioner's unstable social history, his
11   psychological reports and the opposition of law enforcement officials to parole. The record
12   contains evidence that Petitioner has an unstable social history, including drug and alcohol use
13   that led to a discharge from the military.[5] Id. at 17; Ans., Ex. E (March 2003 Psychological
14   Evaluation) at 2. Petitioner's lack of truthfulness, as indicated in his psychological report, was
15   expressly noted by the Board. One report stated that "[Petitioner] denied ever confessing [to the
16   crime], but admitted lying to police and then saying later he was afraid to tell the truth because
17   his friend had threatened to kill his son if he told." Id. at 30. "[Petitioner] told of deceiving his
18   ex-wife, saying, 'I went to the bedroom [where my mother-in-law's corpse was located] and
19   pretended to be surprised (that her mother was dead).'" Ans., Ex. E (March 2003 Psychological
20   Evaluation) at 4. The Board, though commending Petitioner for having been "disciplinary-free"
21   for fourteen years,[6] expressed deep concern that Petitioner may not have been entirely truthful
22   and concluded that Petitioner "needs to participate in self-help and substance abuse programs
23   in order to face, discuss, understand, and cope with stress in a nondestructive manner." Ans., Ex.
24   C at 48. It found that "[u]ntil progress is made, [Petitioner] continues to be unpredictable and a

---

5. Petitioner stated that he falsely admitted drug use so that he would be discharged from military service. Ans., Ex. C at 17 & Ex. E at 2.

6. Petitioner's last two infractions involved being under the influence of alcohol and concealing balloons containing heroin and cocaine in his anal cavity. Ans., Ex. C at 19, 26.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Mason857.hcruling.md

threat to others." Id.  The Board also noted that the Alameda County District Attorney and the Oakland Police Department had expressed their opposition to Petitioner's parole.  Id.  Because some evidence exists to support the Board's finding of unsuitability, the Board's decision has complied with the requirements of due process.  Although he asserts that the evidence used by the Board was unreliable, Petitioner has not shown any evidence to support this assertion.[7][8]

Because the Board complied with the requirements of due process, Petitioner's claim is without merit.   Therefore, under the highly deferential standard imposed by AEDPA, the Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (1), (2).

## CONCLUSION

Applying the highly deferential standard imposed by AEDPA, this Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (1), (2).

///
///
///
///
///
///

---

7. Petitioner also claims that the Board's high number of parole denials "demonstrat[es] a systematic bias against normally granting parole." Pet. at 13.  The Board's actions in other cases are irrelevant.  The Board's duty is to conduct an individualized determination based on the specific facts of each individual case, which it has done here.

8. Petitioner also contends that the Board's decision does not comport with the recommended sentence in California's Sentencing Matrix.  Petition at 13.  This claim is without merit.  The Board is under no duty to apply the matrix once it has determined that a prisoner is unsuitable for parole.  In Re Dannenberg, 34 Cal.4th 1069, 1071 (2005).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Mason857.hcruling.md

1  Accordingly, the Court concludes that Petitioner has failed to show any violation of his federal
2  constitutional rights in the underlying state court proceedings and parole hearing.  The petition
3  for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 5/15/08

_____
JEREMY FOGEL
United States District Judge